(24 Misc. Rep. 492.)
#### DIETERLEN v. POWERS et al.

(Supreme Court, Special Term, New York County.   August, 1898.)

BUILDING CONTRACTS—CONSTRUCTION—PERMITS.

A building contract requiring the contractor to pay for water used in building vault space and all municipal charges for constructing it does not make it the builder's duty to procure the permit for constructing such vault from the municipality.

Action by Theodore Dieterlen against Jesse W. Powers and others. Judgment for plaintiff.

Earley & Prendergast, for plaintiff.
Hatch & Wicks, for defendant Powers.

NASH, J.   The principal question at issue arises under the provision of the contract requiring the plaintiff to pay the compensation to the city for the vault space required in the construction of the building.   Under the caption of "permits" in the specifications it is provided that, "except when hereinafter otherwise stated, the contractor will pay for water for building purposes, vault space, and any other city charges that may arise during the construction of the building."   The plans and specifications required the construction of a vault space for a coal vault, for which, up to the time of the making of the contract between the parties, the city had demanded a compensation of 75 cents per superficial foot, and also an area to be constructed on 125th street, for which no compensation had been required to be paid to the city up to that time; the distinction being that an excavation in the street covered by an arch or a closed covering of iron plates with bull's eyes or patent lights was regarded as a vault to be used as such with the building, and a space on the side or rear of the building not covered, or covered with a grate or perforated iron plates used for ventilation or light, was regarded as an area, for the construction of which no charge was made by the city.   The commissioner of public works required the payment of $2 per foot for the coal vault space, instead of the 75 cents previously charged, which was paid by the contractor during the mason work; and the commissioner also demanded $2 per foot for permission to construct the areaway, so called.   A contention arose as to which of the parties should obtain the permit for the construction of the area, each contending that it should be done by the other; and it is upon the refusal and neglect of the plaintiff to obtain the permit, and go on with the work, that the defendant Powers bases his claim for damages occasioned by the delay, and his expenses incurred in his contest over the matter with the city.

The rights of the parties are, I think, settled by the terms of the contract in favor of the plaintiff.   The specifications required the plaintiff to pay for "vault space and any other city charges that may arise during the construction of the building."   He was not required specifically by the terms of the contract to procure the permit, but to pay the charges therefor.   The fact that he was to pay the compensation for constructing the areaway does not, it seems to me, imply that he was to settle the questions which might arise between the

owner of the premises and the city as to the terms and conditions upon which the permit should be issued and the amount which should be paid therefor. The permit runs to the owner. The ordinance of the city makes it the duty of every person for whom any vault may be constructing to procure the same to be measured by one of the city surveyors, and to deliver to the commissioner of public works a certificate of such measurement before the arching of the vault shall be commenced. The rules of the department of public works require that, "where applications for vault permits are made, such applications shall be in all cases accompanied by a plan, drawn upon a scale of one-fourth of an inch to one foot, showing the whole area to be built upon, including the walls, and designating the open area, if any, and also the area to be used exclusively for stairways; and, in case there shall be any fire hydrant, sewer basin, manhole, or stopcock box in front of the premises where the vault is to be excavated, the position of such hydrant, sewer basin, manhole, or stopcock box shall be shown on such plan." The permit ("as shown by the one in evidence") is granted upon condition that the person or persons to whom it is granted will in all respects comply with the corporation ordinances relative to vaults, etc.; the restrictions of which and the limitations of the permit being particularly stated and set forth therein. The permit is conditioned, further, that the party procuring it agrees to keep the pavement affected by the construction of the vault in good condition for the period of one year from the date of the filing of the surveyor's certificate upon completion of the work. The permit is also subject to revocation at any time by the commissioner of public works, when, in his judgment, the space occupied by the vault may be required for any public improvement, or upon any violation of any condition thereof. It follows, I think, that all these matters, and as well the amount which may be lawfully demanded for the permit, whether the space required shall be regarded as a vault to be paid for as such, or a space to be constructed and maintained as an area, are questions to be determined between the owner and the city. The plaintiff was, by the contract, required to pay for the vault space, whether it was 75 cents a foot, which had been charged up to the time of the making of the contract, or any other sum which the city could lawfully charge. But neither the letter nor the spirit of the contract required the plaintiff to comply with an unlawful demand of the commissioner of public works, or to litigate questions which might arise between the owner and the city upon the application for the permit. The building was substantially completed on the 6th day of November, the day the work on the areaway was stopped by the police; and but for this it would have been fully completed within the time stipulated, allowing for delays which the plaintiff was not responsible for, and which would have been, and, in fact, were, allowed by the architect in his certificate.

I am of the opinion, therefore, that the damages set up by the defendant as a counterclaim, viz.: Money expended for counsel fees, $500; time personally expended, $1,000; rents lost through plaintiff's failure to complete the contract, $2,580,—should not be allowed. Ordered accordingly.